[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
2/17/03
THOMAS K. KAHN
CLERK

_____

No. 94-3139

_____

D. C. Docket No. 96-2461CV-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,
Cross-Appellant,

versus

WILLIAM O. STEELE,

Defendant-Appellant,
Cross-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

**(July 29, 1998)**

Before HATCHETT, Chief Judge, TJOFLAT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL and MARCUS, Circuit Judges.

CARNES, Circuit Judge:

William O. Steele, a pharmacist, was indicted for "knowingly and intentionally dispens[ing]" controlled substances "in violation of Title 21, United States Code, Section 841(a)(1)." The governing statute provides an exception which permits pharmacists and other "practitioners" to dispense controlled substances "to the extent authorized by their registration and in conformity with other provisions of this subchapter," 21 U.S.C. § 822(b), which for present purposes means "in the course of professional practice," 21 U.S.C. § 802(21).

We granted en banc review to decide whether the indictment under which Steele was convicted is defective because it does not negate the course of professional practice exception. A panel of this Court answered that question in the affirmative and reversed Steele's conviction, United States v. Steele,117 F.3d 1231 (11ᵗʰ Cir. 1997), superceding , 105 F.3d 603 (1997), because it was bound to do so by the prior panel decision in Outler v. United States, 659 F.2d 1306 (5ᵗʰ Cir. Unit B 1981). Because we are sitting en banc, we are not bound by the Outler decision. Being free to overrule it, we hold that an indictment of a practitioner for unlawfully dispensing drugs need not aver that it was done

2

outside the course of professional practice. We believe this conclusion is compelled by 21 U.S.C. §885(a)(1) ("It shall not be necessary for the United States to negative any exemption or exception set forth in this subchapter in any . . . indictment . . . ").

The panel's opinion, 117 F.3d at 1232 - 33, sets out the relevant facts, the most pertinent of which concern the contents of the four-count indictment returned against Steele for actions occurring while he was authorized as a pharmacist to dispense controlled substances in the course of his professional practice. Count one of the indictment charged:

> That from on or about July 1, 1993, and continuously thereafter, up to and including on or about November 2, 1993, in the Northern District of Florida, the defendant, William O. Steele, did knowingly and intentionally dispense hydromorphone hydrochloride, a schedule II controlled substance, commonly known as Dilaudid, in violation of Title 21, United States Code, Section 841(a)(1).

117 F.3d at 1233. Counts two, three, and four are identical except that the controlled substances named in them were Xanax, Valium, and Percodan, respectively. The government's theory of prosecution was that on numerous occasions during the specified period, Steele dispensed those controlled

substances pursuant to prescriptions he knew to be forged . Steele maintained that he did not know they were forged. The jury found that he did and convicted him.

Steele contends there was insufficient evidence to convict, but the panel did not reach that issue. Instead, it held that the indictment was defective because it failed to allege that Steele dispensed the drugs outside the course of his professional practice as a pharmacist. See, 117 F.3d at 1232, 1235. The panel reached that holding reluctantly, because it believed that the plain language of 885(a)(1) obviated the need for such an allegation. Nonetheless, the panel felt bound to follow the holding in Outler, which was to the contrary. See 117 F.3d at 1235 & n.5 ("The holding in Outler stands in apparent conflict with section 885(a)(1) . . . [but] . . . even if it conflicts with statutory law, we are bound by Outler until such time as it is overruled.") The panel was correct in both respects. Under our prior precedent rule, a panel cannot overrule a prior one's holding even though convinced it is wrong. See, e.g., Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997) ("The law of this circuit is 'emphatic' that only the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision ."), cert. denied, ___ U.S. ___, 118 S. Ct. 1529 (1998);

4

United States v. Hogan , 986 F.2d 1364, 1369 (11th Cir. 1993) ("[I]t is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court.").  However, we are not bound by Outler, and our examination of the relevant statutory provisions leads us to conclude, as the panel in this case did, that Outler was wrongly decided.

21 U.S.C. § 841(a) provides:  "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally (1) to . . . dispense  . . .  a controlled substance . . . ."  The subchapter referred to is Subchapter I of Chapter 13 of Title 21, and that subchapter runs from § 801 through § 904.

One of the authorized exceptions to the proscription against dispensing controlled substances  is contained in 21 U.S.C. § 822(b), which specifies that "Persons registered by the Attorney General under this subchapter to . . . dispense controlled  substances are . . . authorized to possess . . . or dispense such substances . . . to the extent authorized by their  registration and in conformity with the other provisions of this subchapter."  "Dispense"  means "to deliver a controlled substance to an ultimate user  or  research  subject  by,

5

or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance." 21 U.S.C. § 802(10). An "ultimate user" is "a person who has lawfully obtained . . . a controlled substance for his own use or for the use of a member of his household," 21 U.S.C. § 801(27), as by prescription from a practitioner. The term "practitioner" is defined to include "a physician, dentist, veterinarian, scientific investigator, pharmacy, hospital, or other person licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which he practices or does research, to distribute, [or] dispense . . . a controlled substance in the course of professional practice or research." 21 U.S.C. § 802(21).

The upshot of all those provisions is that because Steele was acting as an agent of a registered pharmacy, he was authorized to dispense controlled substances in the course of his professional practice as a pharmacist, but only pursuant to a prescription issued by a practitioner. See 21 U.S.C. § 829 (a) - (b). That is undisputed. What is disputed between the parties is the meaning and effect of § 885(a)(1), which provides:

> It shall not be necessary for the United States to negative any exemption or exception set forth in this subchapter in any . . . indictment . . . or in any trial . . .

6

and the burden of going forward with the evidence with respect to any such exemption or exception shall be upon the person claiming its benefit.

The meaning of that provision, as it relates to the issue before us, is evident from its plain language: an indictment charging a violation of § 841(a)(1) need not negate the course of professional practice exception contained in § 822(b).

"In construing a statute we must begin, and often should end as well, with the language of the statute itself." Merritt v. Dillard, 120 F.3d 1181, 1185 (11th Cir. 1997). Where the language Congress chose to express its intent is clear and unambiguous, that is as far as we go to ascertain its intent because we must presume that Congress said what it meant and meant what it said. See, e.g., Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253 - 54, 112 S.Ct. 1146, 1149 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

Steele argues that United States v. Moore, 423 U.S. 122, 96 S.Ct. 335 (1975), stands for the proposition that a practitioner may be convicted for distributing and dispensing controlled substances only if the government pleads and proves that those activities were outside the course of professional practice.

7

That is not what that case holds. Certiorari was granted in Moore to review a court of appeals decision that 21 U.S.C. § 841 does not apply to registered practitioners, such as the physician in that case, regardless of whether their distributing and dispensing were in the course of professional practice. The Supreme Court reversed, holding that § 841 does apply to registered practitioners when their activities fall outside the usual course of professional practice. See id. at 124, 96 S. Ct. at 336. However, the Court did not address the issue of whether the outside the course of professional practice factor was an element of the offense or whether the government was required to plead it in the indictment. It is worthy of note that the indictment in the Moore case alleged nothing about the course of professional practice. See Moore v. United States, 506 F.2d 426, 446 n.2 (D.C. Cir. 1973) (dissenting opinion).

Steele also seeks support in United States v. Vuitch, 402 U.S. 62, 91 S. Ct. 1294 (1961), in which the Supreme Court stated: "It is a general guide to the interpretation of criminal statutes that when an exception is incorporated in the enacting clause of a statute, the burden is on the prosecution to plead and prove that the defendant is not within the exception." Id. at 70, 91 S. Ct. at 1298. The government counters by quoting the general rule announced in McKelvey v.

8

United States, 260 U.S. 353, 357, 43 S. Ct. 132, 134 (1922), that: "[A]n indictment or other pleading founded on a general provision defining the elements of an offense . . . need not negative the matter of an exception made by proviso or other distinct clause."

Both the Vuitch and the McKelvey rules are rules of statutory construction, or "general guide[s] to the interpretation of criminal statutes," Vuitch, 402 U. S. at 90, 91 S. Ct. at 1298, and as such they are useful when Congress has not made its intent clear. In this case we have no need to rely upon such rules of construction, because Congress has explicitly and unambiguously stated in § 885(a)(1) that an indictment charging a defendant with violating § 841(a)(1) is not required to negate the course of professional practice exception. Congress could scarcely have been any clearer about that.

Steele protests that Congress could not have meant what it said in § 885(a) (1), because that would mean prosecutors could indict each and every pharmacist and doctor in the country for simply carrying out their professional duties. In other words, if we apply the statute as written, the sky will fall, at least on pharmacists and doctors. Of course, if the sky starts falling, it could just as well fall on research scientists and on those who legitimately manufacture and

9

transport controlled substances, as well as on every legitimate, prescription-holding ultimate user,  because all are saved from the broad terms of §§ 841(a)(1) or  844(a) by exceptions that are also subject to the provisions of § 885(a)(1).

Steele does not explain why busy government prosecutors would want to indict any case that they are certain to lose when it goes to trial, if not sooner. We seriously doubt that the Department of Justice would tolerate the continued employment of any prosecutor who would do that.  Steele's argument about government prosecutors indicting pharmacists and doctors for possessing and dispensing controlled substances in the course of their professional practice also fails to explain why that  has not been a problem in the three circuits where the conclusion we reach today has long been the law.  Twenty years ago the Seventh Circuit said that an indictment charging a physician with dispensing controlled substances need not allege that the  prescriptions he wrote were outside the course of his professional  practice.  See United States v. Roya, 574 F.2d 386, 391 (7th Cir. 1978) ("An indictment founded on a general provision of a statute need not negative an exception made by a proviso or other distinct clause, whether in the same section or elsewhere.").  Eighteen years ago the Sixth

10

Circuit held that an indictment charging pharmacists with illegally distributing controlled substances need not allege that they acted outside the usual course of professional conduct. See United States v. Seelig, 622 F.2d 207, 211-12 (6th Cir. 1980). The same rule has been in effect in the Third Circuit for six years. See United States v. Polan, 970 F.2d 1280, 1282 (3rd Cir. 1992) (indictment of physician for distributing and conspiring to distribute controlled substance not defective for failure to allege absence of legitimate medical reason). There has been no report of prosecutors running amuck in any of those jurisdictions. In any event, the concerns Steele puts forward implicate policy judgments that are within the province of Congress.

It is not the courts but Congress that defines crimes and defenses in the United States Code. Subject only to constitutional constraints, it has the authority to specify whether a given factor must be pleaded by the government in the indictment as an element of an offense, or affirmatively raised by the defense as part of its case. Steele contends that Congress overstepped its bounds with §885(a)(1), because the course of professional practice factor is an element of the § 841(a)(1) offense, and all elements must be alleged in the indictment, see, e.g., Russell v. United States, 369 U.S. 749, 763, 82 S.Ct.

11

1038, 1047 (1962). An essential premise of that syllogism is that the course of professional practice factor is an element and not a defense, but that is not what Congress said when it definitively exercised its right to say. Instead, Congress said that the course of professional practice exception, indeed all exceptions to the prohibition against manufacturing, distributing, dispensing, and possessing controlled substances, are defenses not elements, and that their inapplicability need not be alleged in the indictment.

An indictment is sufficient "if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United States v. Dabbs, 134 F.3d 1071, 1079 (11th Cir. 1998). Because the indictment in this case does all of that, it is not defective.

In holding that an indictment charging a practitioner with violating 21 U.S.C. § 841(a)(1) need not negative the course of professional practice exception, we join the Third, Sixth, and Seventh Circuits, see Polan, Seelig, and Roya, and we return to the pre-Outler position our predecessor Court took in United States v. Ramzy, 446 F.2d 1184 (5th Cir. 1971), which involved an earlier

12

version of the current Controlled Substances Act. Like the other three circuits, we part company with the Ninth Circuit's position on this issue, see United States v. King, 587 F.2d 956, 962-65 (9th Cir. 1978) (two-to-one decision). One problem with the Ninth Circuit's majority opinion in King, as the Sixth Circuit has pointed out, see Polan, 970 F.2d at 1283, is that its analysis of this specific issue fails to focus upon § 885(a)(1), the key provision upon which the issue turns. The same is true of the opinion in Outler, the decision which we overrule today.

We have decided only a pleading issue – that the course of professional practice exception is an affirmative defense which need not be negated in the indictment. We have no occasion to address the issue of who bears the burden of persuasion, and how heavy that burden is, once the defendant goes forward with the evidence about it as § 885(a)(1) requires. The burden of persuasion issue is of no significance to the conviction under review in this case, because the district court instructed the jury that the government bore that burden and could discharge it only by proof beyond a reasonable doubt. Whether a defendant is entitled to such an instruction is an issue we have no occasion to address.

Steele does raise other issues relating to his conviction that have not yet been addressed because the panel did not reach them.  We express no view on those other issues, choosing instead to let the panel decide them. The same is true of the sentencing issue raised in the government's cross-appeal.

Having decided the issue on which we granted en banc review, this case is REMANDED TO THE PANEL for decision of the other issues raised in the appeal and the cross-appeal.

**EDMONDSON, Circuit Judge, Concurring:**

Today's court relies heavily on what we see as the plain language of the pertinent statute.  I agree with the opinion and with the result.  But I point out that we do <u>not</u> have before us today a statute that was enacted long ago.  When those much older statutes are being construed by modern courts, our response as modern readers to the words of the statute may not be what the words meant to the Congress speaking at a very different time; and the idea of plain meaning becomes far more complicated.