**UNITED STATES of America,**

v.

**William Cuero MOSQUERA.**

**No. 8:01–CR–305–T–17TGW.**

United States District Court,
M.D. Florida,
Tampa Division.

Jan. 10, 2002.

**1336**

Ronald J. Marzullo, Tampa, FL, for Defendant.

W. Stephen Muldrow, U.S. Atty's Office, Tampa, FL, for U.S.

### ORDER

KOVACHEVICH, District Judge.

This cause comes before the Court for consideration of Defendant William Cuero Mosquera's Motion to Dismiss Indictment for Violation of Bilateral Agreement and Venue and Memorandum of Law in support thereof (Docket No. 37, filed September 17, 2001); Defendant William Cuero Mosquera's Motion to Dismiss Indictment Due to the Fact That 42 U.S.C.App. § 1903 and 21 U.S.C. § 841(b)(1)(A)(ii) Are Unconstitutional and Memorandum of Law in support thereof (Docket No. 38, filed September 17, 2001); Defendant William Cuero Mosquera's Motion to Dismiss Indictment because Title 46 U.S.C.App. Section 1903 Unconstitutionality Removes the Determination of the Element "A Vessel Subject to the Jurisdiction of the United States" from the Jury and Memorandum of Law in support thereof (Docket No. 39, filed September 18, 2001); and Plaintiff United States of America's Omnibus Response in Opposition to Defendant Cuero–Mosquera's Three (3) Motions to Dismiss the Indictment (Docket No. 43, filed October 15, 2001).

### Background

On July 25, 2001 the United States Coast Guard (USCG) Law Enforcement Detachment (LEDET) personnel aboard the USS Monsoon (Monsoon) attempted to interdict a speed boat in the Eastern Pacific Ocean. While pursuing the boat, crew members on the speed boat were observed dumping bales overboard. After being pursued by the Monsoon for fifty miles, the speed boat, which did not bare any registry number or markings, was stopped. The USCG boarding team asked the crew members right of approach questions, and, when none of the crew members would answer questions, the USCG boarding team boarded the boat. The crew members, one of whom was William Cuero Mosquera (Defendant), were transferred to the Monsoon. While being transferred, the crew was asked again about the nationality of the speed boat, and Defendant replied that it was registered in Guatemala. However, when the Guatemalan authorities were contacted, they denied nationality of the boat. The Monsoon then returned to the location where the crew members of the speed boat were observed throwing bales overboard, and the USCG recovered numerous bales of cocaine. The crew members, including Defendant, were transported to the United States, with their first point of entry being Tampa, Florida.

On August 22, 2001, the Grand Jury handed down a two-count indictment, charging Defendant with violations of the Maritime Drug Law Enforcement Act (MDLEA), Title 46 Appendix, United States Code, Sections 1903(a), (g), and (j); Title 18, United States Code, Section 2; and Title 21, United States Code, Section 841(b)(1)(A)(ii) for knowingly and intentionally conspiring to possess and distrib-

ute and possessing with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine while aboard a vessel subject to the jurisdiction of the United States. (Docket No. 31, filed August 22, 2001).

Defendant subsequently filed three Motions to Dismiss the Indictment, alleging that the indictment violates international law; that venue in the Middle District of Florida is improper; and that Title 46 Appendix, United States Code, Section 1903 and Title 21, United States Code, Section 841(b)(1)(A)(ii) are unconstitutional. (Docket Nos. 37–39). The Government contends that this Court must deny Defendant's motions because Sections 1903 and 841 are constitutional; jurisdiction is not an element of the offense that the Defendant is charged with under Section 1903; Defendant cannot use the failure to comply with international law as a defense under Section 1903; and venue is proper in the Middle District of Florida under Section 1903(f). (Docket No. 43 at 1–3).

### Discussion

### I. Motion to Dismiss Indictment for Violation of Bilateral Agreement and Venue

Defendant moves to dismiss the indictment on the grounds that it fails to conform to Rule 7 of the Federal Rules of Criminal Procedure, thereby violating Defendant's rights to be informed of the charges against him under the Sixth Amendment of the United States Constitution; that venue is not proper in this Court; and that the speed boat involved was not a vessel subject to the jurisdiction of the United States pursuant to Section 1903(c)(1)(C). Defendant also moves to dismiss the indictment because he alleges that the USCG violated international law when it boarded Defendant's vessel.

The Government asks the Court to deny Defendant's motion because venue is proper pursuant to the venue provision found in Section 1903(f), which states that venue is proper where a defendant first enters the United States; the indictment clearly notes, and the government can establish, that jurisdiction is proper because Defendant was aboard a vessel without nationality; and Section 1903(d) specifically prohibits Defendant from asserting a failure to comply with international law as a defense.

■ Federal Rule of Criminal Procedure 7(c) states that an indictment must be a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c). "An indictment is sufficient 'if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.'" *U S. v. Steele*, 147 F.3d 1316, 1320 (11th Cir.1998) (quoting *U.S. v. Dabbs*, 134 F.3d 1071, 1079 (11th Cir.1998)).

■ Defendant argues that the indictment fails to conform to the proper standards because the indictment charges Defendant with crimes that he allegedly committed prior to entering the Middle District of Florida. He also argues that the indictment is insufficient because it does not furnish him with a sufficient description of the charges against him to enable him to prepare a defense; to ensure that Defendant is prosecuted on the basis of the facts presented to the grand jury; to enable him to rely upon a judgment under the indictment as a bar against double jeopardy; and to inform the court of the facts alleged so that it can determine the sufficiency of the charge. Specifically, Defendant's indictment states that:

Between an unknown date through on or about July 25, 2001, while aboard a

vessel subject to the jurisdiction of the United States, that is, a vessel without nationality, with the Middle District of Florida being the place at which the defendant[ ] entered the United States, the defendant[ ], ... William Cuero Mosquera ..., did knowingly and intentionally, while aiding and abetting [other crew members] and other persons unknown to the Grand Jury, possess with the intent to distribute five (5) kilograms or more of a mixture or a substance containing a detectable amount of cocaine, a Schedule II narcotic controlled substance.

All in violation of Title 46 Appendix, United States Code, Sections 1903(a) and 1903(g); Title 18, United States Code, Section 2; and Title 21, United States Code, Section 841(b)(1)(A)(ii).

(Docket No. 31 at Count 1). The allegations in Count Two are identical to Count One, except that it also alleges that Defendant combined, conspired, and agreed with other crew members in violation of Section 1903(j). (Docket No. 31 at Count 2).

Under Rule 7 of the Federal Rules of Criminal Procedure, the indictment is a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c). The indictment also protects Defendant's Sixth Amendment rights because he is informed of the nature and cause of the accusations against him. Moreover, the indictment contains the essential elements of the charged offense ("knowingly and intentionally, while aiding and abetting ... with the intent to distribute five (5) kilograms or more of a mixture of or a substance containing a detectable amount of cocaine ...."); it fairly informs the Defendant of the charges against him ("[I]n violation of Title 46 Appendix, United States Code Section 1903(a) and (g); Title 18, United States Code, Section 2 ...."); and it enables Defendant to rely on a judgment that will preclude him from be-

ing tried for the alleged crime twice (The indictment alleges the specific date, location, and amount of contraband.). Therefore, the indictment conforms to the sufficiency requirements for indictments in this Circuit.

■ Next, Defendant argues that the indictment should be dismissed because venue is not proper in the Middle District of Florida. Venue is proper in the location where Defendant first entered the United States. 46 U.S.C.App. § 1903(f) ("Any person who violates this section shall be tried in the United States district court at the point of entry where that person enters the United States ...."). Defendant does not dispute that his first point of entry was Tampa, Florida; rather, he claims that venue is not proper because the charges that he is accused of occurred before he entered Tampa, Florida. The Court finds this argument without merit under Section 1903(f). Because Defendant's first point of entry was Tampa, Florida, venue is proper in the Middle District of Florida.

■ Additionally, Defendant argues that this Court does not have jurisdiction because the speed boat that he was aboard was not a "vessel subject to the jurisdiction of the United States." A "vessel subject to the jurisdiction of the United States" is defined under Section 1903 as one that is without nationality. 46 U.S.C.App. § 1903(c)(1)(A). Section 1903(c)(2) further defines a "vessel without nationality" to include:

(A) a vessel aboard which the master or person in charge makes a claim of registry, which claim is denied by the flag nation whose registry is claimed;

(B) any vessel aboard which the master or person in charge fails, upon request of an officer of the United States empowered to enforce applicable provisions of United States law, to make a claim of

nationality or registry for that vessel; and

(C) a vessel aboard which the master or person in charge makes a claim of registry and the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

46 U.S.C.App. § 1903(c)(2). A claim of registry or nationality may be made by showing documents evidencing the boat's nationality, with a verbal claim of registry from the master or person in charge, or by flying its flag or ensign. *U.S. v. Fuentes,* 877 F.2d 895 (11th Cir.1989).

Defendant argues that the speed boat that he was aboard was not subject to the jurisdiction of the United States because it was not without nationality; it was not assimilated to a vessel without nationality; there was no evidence of the terms of the treaty between the United States and the Columbian government; the boat was not within the customs waters of the United States; and there was no evidence that the United States obtained the requisite consent from Columbian authorities. (Docket No. 37 at 5–6).

The Court finds Defendant's arguments without merit. When the speed boat was initially stopped, no crew member would acknowledge the nationality of the speed boat or come forward as the captain or master of the speed boat; thus, under Section 1903(c)(2)(B), the speed boat falls under the jurisdiction of the United States as a vessel without nationality. 46 U.S.C.App. § 1903(c)(2)(B). Moreover, when Defendant finally claimed that the boat was registered in Guatemala (not Columbia as Defendant asserts in his Memorandum of Law), the Guatemalan authorities denied registry. Because the claim of registry was denied by the flag nation whose registry was claimed, the speed boat is a "vessel without nationality" and subject to the jurisdiction of the United

States pursuant to Section 1903(c)(2)(A). 46 U.S.C.App. § 1903(c)(2)(A).

Finally, Defendant argues that the indictment violates international law because the United States does not have subject matter jurisdiction over foreign nationals aboard flag vessels in foreign waters unless jurisdiction is permitted under the "protective principle" of international law jurisdiction. He also claims that the USCG violated international law because it failed to obtain consent from the Columbian Government. The Court also finds this argument without merit.

First, the vessel that Defendant was aboard was not flying a flag, and the Guatemalan government did not claim registry of the vessel; therefore, the vessel was stateless. As described above, a vessel is considered stateless when "the master or person in charge makes a claim of registry, which claim is denied by the flag nation." *U.S. v. Maynard,* 888 F.2d 918, 923 (1st Cir.1989) (quoting 46 U.S.C.App. § 1903(c)(2)(A)). Alternatively, a vessel will be considered stateless if the master in charge "fails, upon request of an officer of the United States ... to make a claim of nationality ...." *Id.* (quoting 46 U.S.C.App. § 1903(c)(2)(B)). The vessel upon which Defendant was aboard was a stateless vessel because the master or person in charge failed to make a claim of registry of the vessel when first confronted by the USCG. Additionally, when Defendant finally stated that the vessel was Guatemalan, the Guatemalan authorities denied registry of Defendant's vessel. Thus, the vessel was stateless for the purposes of Section 1903.

 A stateless vessel is subject to jurisdiction in any nation under international law. *U.S. v. Marino–Garcia,* 679 F.2d 1373, 1383 (11th Cir.1982). Moreover, under the "protective principle" of international law, a nation is permitted "to

assert jurisdiction over a person whose conduct outside the nations's territory threatens the nations' security." *U.S. v. Cardales*, 168 F.3d 548, 553 (1st Cir.1999) (quoting *U.S. v. Robinson*, 843 F.2d 1, 4 (1st Cir.1988)). Under the MDLEA, Congress specifically found that "trafficking in controlled substances aboard vessels is a serious international problem and is universally condemned[, and] ... presents a specific threat to the security ... of the United States." *Id.* (citing 46 U.S.C.App. § 1902). Therefore, the MDLEA, specifically Section 1903, does not violate international law.

Although Defendant also asserts that the charges against him should be dismissed on the basis that there is no nexus between the vessel and the United States because there is no evidence that the contraband that the USCG found was intended to be distributed in the United States, the Eleventh Circuit has found that there does not need to be proof of a nexus between a stateless vessel and the country seeking jurisdiction. *Marino–Garcia*, 679 F.2d at 1383. "Jurisdiction exists solely as a consequence of the vessel's status as stateless. Such status makes the vessel subject to action by all nations proscribing certain activities aboard stateless vessels and subjects those persons aboard to prosecution for violating the proscriptions." *Id.* For the above reasons, the Court finds that this Court has subject matter jurisdiction and the MDLEA does not violate international law.

Because the indictment was sufficient under Rule 7 of the Federal Rules of Criminal Procedure and the Sixth Amendment of the United States Constitution; venue is proper in the Middle District of Florida; the speed boat upon which Defendant was aboard was a vessel subject to the jurisdiction of the United States; and the indictment did not violate international law, Defendant's Motion to Dismiss for Violation of Bilateral Agreement and Venue is denied.

## II. Motion to Dismiss Indictment Due to the Fact That 46 U.S.C.App. § 1903 and 21 U.S.C. § 841(b)(1)(A)(ii) Are Unconstitutional

■ Defendant moves to dismiss the indictment on the grounds that Title 46 Appendix, United States Code, Section 1903 and Title 21, United States Code, Section 841(b)(1)(a)(ii) are unconstitutional in light of the United States Supreme Court decision, *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Defendant also claims that Title 21, United States Code, Section 960 is unconstitutional because it permits the increase in maximum penalties without requiring that the "factors" be alleged in the indictment and proven beyond a reasonable doubt by a jury. The Government requests that this Court deny Defendant's motion because the indictment correctly charged the drug quantity involved, and any *Apprendi* concerns can be eliminated by requiring the quantity of drugs to be determined by the jury beyond a reasonable doubt. Thus, it argues that Title 46 Appendix, United States Code, Section 1903 and Title 21, United States Code, Section 841 are constitutional.

In asking the Court to dismiss his indictment, Defendant argues that *Apprendi* renders the MDLEA unconstitutional because of the MDLEA's sentencing mechanism that requires defendants convicted under the MDLEA to be punished in accordance with the penalties set forth in Title 21 United States Code, Section 960. 46 U.S.C.App. § 1903(a). As such, Defendant argues that the statute is facially unconstitutional because it prevents a jury determination of all of the offense elements. Conversely, the Government argues that the penalty provisions of Title 46

Appendix are found at Section 1903(g) and imposes penalties in accordance with Section 960, which mandates penalties for cases involving five kilograms or more of cocaine. Because the indictment specifically alleges the drug quantity and the issue of the drug quantity can be submitted to the jury, the Government argues Section 1903 and Section 841 are constitutional.

As Defendant correctly noted, the MDLEA itself does not require a finding of a particular drug quantity. The MDLEA provides that:

> It is unlawful for any person ... on board a vessel subject to the jurisdiction of the United States ... to knowingly or intentionally manufacture or distribute, or to possess with the intent to manufacture or distribute, a controlled substance.

46 U.S.C.App. § 1903(a). The penalties proscribed in Section 960 come into play when the quantity of drugs that the Defendant possessed are considered. Specifically, Section 906 provides mandatory penalties when any person knowingly and intentionally brings or possesses "5 kilograms or more of a mixture or substance containing a detectable amount of ... cocaine ..." on board a vessel. 21 U.S.C. § 960(b)(1)(B)(ii).

In *Apprendi*, the United States Supreme Court addressed the constitutionality of a statutory sentencing scheme that allowed judge-made findings to increase a defendant's statutory maximum penalty. 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The defendant fired several shots into the home of an African American family who lived in his all-white New Jersey neighborhood. *Id.* at 469, 120 S.Ct. 2348. He pled guilty to unlawful possession of a firearm, a charge that carried a penalty range of five to ten years imprisonment. *Id.* at 470, 120 S.Ct. 2348.

After the defendant pled guilty to the second-degree crime of firearm possession, the state requested that the sentencing court impose an enhanced sentence under New Jersey's hate crime statute. *Id.* Following an evidentiary hearing, the trial judge found, by a preponderance of the evidence, that the crime was motivated by racial bias and applied the hate crime statute. *Id.* at 471, 120 S.Ct. 2348. Under the terms of the statute, the judge's finding allowed an "extended term" of imprisonment of ten to twenty years. *Id.* Accordingly, the judge sentenced the defendant to twelve years imprisonment, two years above the maximum applicable to the second-degree charge to which the defendant pled guilty. *Id.* The defendant appealed the decision on the grounds that the Due Process Clause of the Fourteenth Amendment required that the issue of racial bias be submitted to a jury and proven beyond a reasonable doubt. *Id.*

The New Jersey Supreme Court upheld the decision, but the United States Supreme Court reversed, holding that New Jersey's procedure violated the Due Process Clause because a criminal defendant is entitled to a jury determination that he or she is guilty of every element of the crime for which he is charged, beyond a reasonable doubt. *Id.* at 477, 120 S.Ct. 2348. Accordingly, the Supreme Court held that any fact that increases the penalty for a crime beyond the statutory maximum must be determined by the jury and proven beyond a reasonable doubt. *Id.* at 490, 120 S.Ct. 2348.

There has been considerable variations on the interpretation of *Apprendi* among the Circuits. However, the Eleventh Circuit, in an *en banc* decision, held that *Apprendi* has no effect on cases in which the defendant's actual sentence falls within the range prescribed by the statute for the crime of conviction. *U.S. v. Sanchez*, 269

F.3d 1250, 1268 (11th Cir.2001). In *Sanchez,* the Eleventh Circuit addressed whether Section 841 was unconstitutional in light of *Apprendi* and its various interpretations among the Circuits. The defendants challenged their convictions and sentences after pleading guilty to conspiracy to distribute and to possess with intent to distribute in violation of Title 21, United States Code, Sections 841 and 846. *Id.* at 1252. The defendants' indictments referenced the statute under which they were charged and the type of drugs involved, but not the quantity of drugs. *Id.* at 1254.

Initially, both defendants pled not guilty and filed Motions to Dismiss their indictments on the grounds that the statutory maximum penalties under Section 841(b) for violations under Section 841(a) were determined by the quantity of drugs that the defendants possessed, and the quantity of drugs was not charged in their indictments. *Id.* at 1253–1254. The district court denied the motions on the grounds that Section 841 did not require the drug quantity as an element of the criminal offense. *Id.* During sentencing, the district court found, by a preponderance of the evidence, that each defendant was responsible for a drug quantity of over two thousand kilograms and then sentenced the defendants under Section 841(b)(1)(B). *Id.*

In distinguishing *Sanchez* from *Apprendi,* the Eleventh Circuit noted that *Apprendi* was a sentencing case that presented a narrow sentencing issue and a narrow holding: A trial judge cannot find a fact and use that fact to impose a sentence higher than the prescribed statutory maximum penalty for the criminal offense. *Id.* at 1261. Additionally, the court noted that *Apprendi* did not require all sentencing factors be submitted to a jury and proven beyond a reasonable doubt. *Id.* Thus, "*Apprendi* is implicated only when a

judge-decided fact *actually increases* the defendant's sentence beyond the prescribed statutory maximum for the crime of conviction." *Id.* at 1263 (emphasis in original).

Because *Apprendi* addressed only the constitutionality of a state statutory sentencing scheme, the Eleventh Circuit held that *Apprendi* did not change its precedent interpreting Section 841. *Id.* at 1268. Specifically, the court held that *Apprendi* "has *no effect* on cases in which a defendant's actual sentence falls *within the range* prescribed by the statute . . ." and that constitutional error exists in a defendant's sentencing procedures only when drug quantity increases a defendant's sentence beyond the statutory maximum, unless it was submitted to a jury and proven beyond a reasonable doubt. *Id.* at 1268, 1270 (emphasis in original).

Following the Eleventh Circuit's holding in *Sanchez,* the Court finds that Title 46 Appendix, United States Code, Section 1903; Title 21, United States Code, Section 841; and Title 21, United States Code, Section 960 are constitutional. Furthermore, Defendant's *Apprendi* arguments are premature because Defendant has not been sentenced, nor has he been tried for the offense of which he is charged. Thus, no *Apprendi* concerns exist. Finally, the Government has stated in its Memorandum of Law that the issue of drug quantity will be submitted to the jury for proof beyond a reasonable doubt; thereby, curing any *Apprendi* concerns that Defendant may have.

For the above stated reasons, the Court finds that Defendant's Motion to Dismiss Indictment Due to the Fact that 46 U.S.C.App. § 1903 and 21 U.S.C. § 841(b)(1)(A)(ii) Are Unconstitutional is denied.

### III. Motion to Dismiss Indictment because Title 46 U.S.C.App. § 1903 Unconstitutionally Removes the Determination of the Element "A Vessel Subject to the Jurisdiction of the United States" from the Jury

■ Finally, the Defendant moves to dismiss the indictment on the grounds that Section 1903 unconstitutionally deprives him of his Fifth and Sixth Amendment rights because the statute takes away from the jury the determination of an element of the offense. The Government asks this Court to deny Defendant's motion because Title 46 Appendix, United States Code, Section 1902 indicates explicitly that jurisdiction is not an element of the offense; thereby, making the determination of jurisdiction a question of law for the trial judge, not the jury.

Section 1903 of the MDLEA provides that "[i]t is unlawful for any person ... on board a vessel subject to the jurisdiction of the United States ... to knowingly or intentionally ... possess with intent to manufacture or distribute, a controlled substance." 46 U.S.C.App. § 1903(a). In 1996, Public Law 104–324, 1138(a)(5) amended the MDLEA to make "vessels subject to the jurisdiction of the United States" a preliminary question of law and explicitly provided that it was "not an element of any offense." *Id.* § 1903(f). Congress has the prerogative to determine the elements of federal offenses. Because Congress expressly defined "vessel subject to the jurisdiction of the United States" as *not an element* of the MDLEA, the Court must find that "vessel subject to the jurisdiction of the United States" is not an element of Section 1903. Therefore, the United States Constitution does not require that the issue be submitted to the jury and proven by a reasonable doubt.

Defendant mistakenly relies on *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) to support his argument that the issue of jurisdiction must be determined by the jury beyond a reasonable doubt. In *Gaudin,* the United States Supreme Court held that, in a criminal jury trial, a jury must determine every element of the offense beyond a reasonable doubt. *Id.* at 510, 115 S.Ct. 2310. The defendant was charged with a violation of Title 18, United States Code, Section 1001, which provides in part:

> [W]hoever, in any matter within the jurisdiction [of any department or agency of the United States], knowingly and willfully—
>
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
>
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
>
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
>
> shall be fined ... or imprisoned not more than five years, or both.

*Gaudin,* 515 U.S. at 507, 115 S.Ct. 2310. The district court instructed the jury that the Government had to prove that the false statements that the defendant allegedly made were material. *Id.* at 508, 115 S.Ct. 2310. The court further instructed the jury that the issue of materiality was a determination for the court, not the jury, to decide. *Id.* On appeal, the Government conceded that materiality was an element of Section 1001, and the United States Supreme Court held that, because materiality was an element of the offense, it had to be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 523, 115 S.Ct. 2310.

Unlike the statute in *Gaudin,* Section 1902 clearly provides that jurisdiction is *not* an element of the offense. In amending the MDLEA, Congress expressly pro-

vided that jurisdiction is a question of law that the trial judge must determine. Moreover, Congress has the power to amend the MDLEA to remove jurisdiction as an element of the offense. *See Staples v. U.S.*, 511 U.S. 600, 604, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (citing *Liparota v. U.S.*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985)) ("The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute."); *Gaudin,* 515 U.S. at 525, 115 S.Ct. 2310 ("[L]egislatures have flexibility in defining the elements of a criminal offense."). Therefore, because jurisdiction is not an element of the offense, *Gaudin* does not apply and the determination of jurisdiction does not have to be submitted to the jury and proven beyond a reasonable doubt.

For the above stated reasons, the Court finds that a "vessel subject to the jurisdiction of the United States" is not an element of the offense and that Section 1903 does not deprive Defendant of his Fifth and Sixth Amendments. Therefore, Defendant's Motion to Dismiss Indictment because Title 46 U.S.C.App. § 1903 Unconstitutionally Removes the Determination of the Element "A Vessel Subject to the Jurisdiction of the United States" from the Jury is denied.

### Conclusion

For the above reasons, the Court is convinced that Defendant's Motions to Dismiss should be **DENIED**. Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss Indictment for Violation of Bilateral Agreement and Venue (Docket No. 37)be **DENIED**; Defendant's Motion to Dismiss Indictment Due to the Fact That 46 U.S.C.App. Section 1903 and 21 U.S.C. Section 841(b)(1)(A)(ii) Are Unconstitutional (Docket No. 38) be **DENIED**; and Defendant's Motion to Dismiss Indictment

because Title 46 U.S.C.App. Section 1903 Unconstitutionality Removes that Determination of the Element "A Vessel Subject to the Jurisdiction of the United States" from the Jury (Docket No. 39) be **DENIED.**